First case on our call this morning is agenda number one, case number 105453, People of the State of Illinois v. Paul Williams. Council may approach. Good morning, Your Honors, Mr. Chief Justice, and may it please the Court. I'm Assistant State's Attorney, Anthony O'Brien, on behalf of the people of the State of Illinois. The question here, Your Honor, is whether Section 301 of the Federal Copyright Act preempts defendants' prosecution for unlawful use of recorded sounds under Section 16-7A2 of the Illinois Criminal Code. In short, it does not, and for two reasons. First, Section 16-7, as a criminal statute, does not fit the category of laws preempted by 301. And second, the Illinois law contains extra elements beyond the exclusive rights of those covered by the Copyright Act. On the first point, 301 preempts state laws that grant legal or equitable rights equivalent to those offered under the Copyright Act. These federally reserved rights are personal in nature and they benefit only the individual copyright owner. In fact, 301 makes this point clear, the personal character of these rights, and shows that the focus of 301 is on personal rights and that it provides that no person is entitled to any such right or equivalent right under state law. This language limits the reach of 301 and takes criminal state laws like 16-7 outside of its scope. This is because criminal laws do not entitle a person to any particular right. In fact, the opposite is true. They protect public or societal norms by punishing prohibited conduct. This is why we see, at least in part, why criminal sanctions do not impute a private right of action or that an individual does not have a right to compel a prosecution. At least in the case law, it's shown that it does not. Counsel, is it true that every court nationwide that has considered preemption under 301 has either expressly or impliedly concluded that preemption was intended to apply to state criminal prosecutions? Yes, and Crow and Borrello have, yes, Your Honor. So any court that has addressed this issue has gone the other way? Right. I mean, there hasn't, I mean, out of all the jurisdictions, there hasn't been that many cases on it. And the particular points raised here haven't been examined in the case law, particularly the distinction between the personal and the private rights and the particular nature of the criminal prosecution that the enforcement of criminal laws are not there to sort out private entitlements. They're there to enforce the public or standard norms. And Section 16-7 is no different. It doesn't create, confer, or define any right, much less a right particular to copyright. Nor does it vindicate in any direct sense a private or personal right. It provides no restitution. It provides no money damages. Instead, it imposes ordinary criminal penalties, felony penalties, as well as a fine. So the language of 301 excludes state criminal laws and nullifies only state measures that afford a person certain entitlements equivalent to a copyright. Now, this is also supported in 301's legislative history. There's an extensive house report that accompanies 301. And it says very clearly that the purpose of 301 was to abolish the dual system of copyright, where you had state common law that protected unpublished works and federal statutory law that protected published works. Nowhere in this do you find Congress saying that there is a problem with state criminal laws or any intent to preempt them. Any problems such as whether the state criminal laws frustrate how rights and creative work are defined. This silence undermines the preemption claim, because criminal laws is a traditional area of state concern and that Congress is expected to speak clearly and to make its intent plain when it seeks to intrude into areas that are traditionally reserved for the states, such as criminal law enforcement. Preemption of a state law that criminalizes piracy is also at odds with Congress's intent at the time that 301 became law. Sound recordings were not added to the Copyright Act until 1971, and it was only after the urging of the recording industry to seek additional protection in combating record piracy. It would be counterproductive for Congress in its effort to combat piracy to displace state laws and then lose the assistance of local law enforcement in combating piracy. And importantly, you find that piracy often plays out on a discrete and local level, and this case provides a useful example. You had a defendant that was selling counterfeit CDs out of a portable suitcase in front of a laundromat. So deterring this sort of activity locally rather than just relying on a broader but distant federal authority, or for that matter, relying on private actors to seek to enjoin such conduct or seek money damages, would not only be inefficient, but unworkable. Is there any import to the fact that the state statute at the very least protects the exclusive rights of Section 106 of the Act, the right to distribute, sell, et cetera? Does that have any import in this? Well, it does, Your Honor, insofar as that is among the exclusive rights that are held by a copyright owner. But what's important is to examine 301 in terms of whose rights are being protected. Or, excuse me, which rights are the focus of preemption. And in 301 it talks about that no person shall be entitled to it. So the focus of the preemption in 301 is state laws that create or define or confirm rights, and you don't find that in a criminal statute. There's an assumption that there is some sort of preexisting right and that the state criminal law there is then in place to enforce or at least protect a broader concern, not the individual entitlements of the person to reproduce or the exclusive rights of the copyright owner. And likewise, what about the fact that the Congress has established a federal criminal enforcement procedure for copyright infringement? They do, but we also find, it's certainly not uncommon that you'll find a federal and state statute that are prohibiting or regulating the same conduct, and you find that certainly in the narcotics laws. Even in trademark, there's a federal statute that criminalizes trafficking in trademarks, and the state of Illinois has a similar one. So the fact that there is this overlap between federal and state criminal provisions is so much important, so much that what is critical is 301. And what is the target of that? Where Congress spoke very specifically in terms of what sort of state activity it was seeking to set aside, and there you find it is the target of what they were targeting as state laws that are offering people rights that are similar or equivalent to the exclusive rights of copyright, and you don't find that under Section 16-7. Mr. O'Brien, though, has any case held that Congress did not intend to preempt the state from criminal prosecutions? No, there is no case with that holding. Your Honors, even if state criminal courts, or I'm sorry, even if state criminal laws are contemplated by 301, Section 16-7 is still spared from preemption because it contains extra elements, and it fits under the extra elements test under 301. The statute requires as an element that the offender act for profit, and acting for profit is not among the exclusive rights under the Copyright Act. In fact, the for-profit interest implicates a variety of state concerns in taxation and the regulation of business affairs. You find that dealers and pirated sound recordings are effectively engaged in a commercial activity. In an illegal one, and their sales are unlikely reported, and it deprives states of tax revenues. And because of the illegal nature of their activities, it's unlikely that they're licensed, so their activities are not monitored by local authorities. It deprives them of any monitoring, their collection of fees associated with the licenses. So you find that the for-profit element imports a variety of state interests as an element distinct from the exclusive rights that are offered under the copyright statute. Your Honor, for these reasons, the people ask that this Court reverse the decision of the Appellate Court and hold that 301 does not preempt state criminal laws such as Section 16-7. Thank you. Chief Justice, may it please the Court. The sound, for a number of reasons, and this Court should affirm his opinion, at least in regards to Section 16-7 of the Act. Now, Section 16-7 forbids the intentional, annoying, or reckless use, for-profit, of any sound or audiovisual recording without the consent of the owner of the master recording. An affirmative defense is if the sounds or images are within the public domain. In fact, in enacting Section 16-7, the legislature of our state sought to criminalize record piracy. Section 16-7 does not require any additional elements that qualitatively distinguish it from copyright infringement. Consequently, it is preempted by the Copyright Act. Now, Section 301 states, on or after January 1, 1978, which is after the enactment of Section 16-7. I apologize, but could you state your name for the record, please? I apologize, Your Honor. My name is Ahmed Kosoko. I'm counsel for Paul Williams, the appellee and cross-appellant in this cause. Thank you, sir. Thank you. Now, Section 301 of the Act states that all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of the Copyright Act, as specified by Section 106, in works of authorship that are fixed in a tangible medium of expression, and that come within the subject matter of the Copyright Act, as specified by Sections 102 and 103. Section 103 are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state. In fact, during legislative debates, it was, quote, stated, The intention of Section 301 is to preempt and abolish any rights under the copyright law or states of any state that are equivalent to copyright. The declaration of this principle is intended to be stated in the clearest, most unequivocal way possible, so as to foreclose any possible misinterpretation of its unqualified intention that Congress should act preemptively to avoid any development of any vague borderline area between the state and federal protection. Now, Section 102 of the Act grants copyright protection to original works of authorship in any fixed tangible medium of expression, which includes motion pictures and sound recordings. Section 106 grants the owners the exclusive right to distribute those works. Now, counsel expressed an interest regarding criminal prosecution. Section 506, Congress addressed the individual and societal interest by holding the copyright order to Section 506 for copyright-related crimes. Now, where civil preemption exists, there also exists preemption in the criminal statutes. This is common sense if we think about it. If Congress intended a uniform body of law in this area, what better way to have set that than to have 50 disjointed laws in this area? Moreover, regarding counsel's for-profit element, an element of the Copyright Act also includes that it not be distributed for profit. Therefore, the state's position is without any merit whatsoever, and that's why it's been a veritable shutout against their position. Now, Justice Garcia's opinion, however, is not without flaws. His analysis regarding Section 16.8 cannot be reconciled with this Court's recent opinion in People v. Carpenter, only a year ago in April. Now, Section 16.8, which is the Companion Statute of 16.7, makes it the unlawful use of unidentified sound or audiovisual recordings is committed when a person intentionally, knowingly, recklessly, or even negligently for profit distributes or otherwise deals in unidentified sound recordings. The legislature defined unidentified sound recordings as a sound recording that lacks the actual name and full and correct address of the manufacturer, the name of the actual performers, or groups legibly and prominently printed on the outside cover or jacket on which the record was made. The legislature also does not recognize that unidentified sound recordings are unlawful, and that's why it's been a veritable shutout against Section 16.8. Now, Justice Garcia's opinion, however, is not without flaws. His analysis regarding Section 16.8, which is the Companion Statute of 16.7, makes it the unlawful use of unidentified sound or audiovisual recordings. The legislature defined unidentified sound recordings as a sound recording that lacks the actual name and full and correct address of the manufacturer, the name of the actual performers, or groups legibly and prominently printed on the outside cover or jacket on which the record was made. There's been no, our due process clause is a bit broader than the federal due process clause. Therefore, standing has always been there whenever you challenge the overbreadth clause due to innocent conduct. Now, the stated public purpose. On the overbreadth argument, I asked a question of Mr. O'Brien regarding other jurisdictions. There haven't been any courts in other jurisdictions that have accepted the claim of overbreadth as it applies to 16.8, have there been? The only court that I recognize is Anderson v. Nidoff. However, like I said, our due process clause is broader than everyone else's. And the reason that the overbreadth argument wasn't accepted, because it had to be real, substantial as well as real, right? The claim that this is not substantial when the state of Illinois has barred the distribution of all unidentified sound recordings is definitely substantial, Justice Thomas. In fact, defined sound or audiovisual recording means any sound or audiovisual recording, visual, phonograph, disc, pre-recorded tape, film, wire, magnetic tape, other object, device or medium now known or hereafter invented. This statute is not restricted to just the music industry or the movie industry. It's any sound recording that's distributed. This is definitely substantial. And in fact, you cannot reconcile it with this Court's recent opinion in Carpenter. Now, the stated purpose of Section 16.8 is to, at least under Justice Garcia's analysis, is to prevent the distribution of deceptively packaged materials. However, a person commits this offense even if there's no intent to defraud or deceive the public. And even if for legitimate reasons the performer wants to say anonymous, which the First Amendment protects. Now, when a statute is unambiguous, it must be enforced as enacted. A court may not depart from its plain language by reading into it exceptions, limitations or conditions not expressed by the court. In fact, this statute fails a rational basis, let alone the strict scrutiny that its First Amendment implications arise. Now, in Carpenter, in April of last year, this court examined the statute and made it a crime to have a false or secret compartment in a motor vehicle. He found that it was facially invalid. Now, it was a laudable goal to protect law enforcement from hidden contraband of firearms. But yet and still, this court unanimously held that because it punished non-culpable behavior, in other words, you could hide things that had no criminal intent, even if it wasn't contraband of firearms, you could still be, under the plain meaning of the language, punished. You held this because we have a long line of cases going back to 1985 since WIC which have held this. In WIC, you had a statute dealing with arson. This court held that despite the laudable goals of the arson statute, because you could read into it innocent conduct that could be punished, it was also facially invalid. Now, if the intent of the legislature... Excuse me, counsel. It appears that the other courts that have rejected these similar due process arguments have done it, and I'd like you to redress this, have done it on the basis that this kind of statute has a dual purpose. And the second part of the purpose, it ignores the... Your argument, according to these other jurisdictions, ignores the main purpose of the statute, which is to protect consumers. And it's on that basis and the dual purpose basis that they reject the argument that the statute is indirectly designed to protect against privacy, as you argue. Not only privacy... How do you respond to their dual purpose analysis with respect to the due process claim? It is a laudable goal to protect the consumers, it is. But it's still an unreasonable exercise of legislative power. If the intent of the legislature was to punish those who sell deceptively packaged items, then make that a crime. Why do you need to engulf any people who don't sell deceptively packaged items? In fact, if we really examine the statute, if someone were... In Mr. Williams' case, for example, if he were to just include that he made these CDs at his home, he would not be committing a class 4 felony. However, an independent performer, who for legitimate reasons omits their home address, would still be committing a class 4 felony. It's just not narrowly tailored. In fact, in regards to your concern, Justice Thomas, the state already has a theft by deception statute. So if you're selling people stuff that's misrepresented, we already have a statute that addresses that. And once again, we have to harken back to the fact that there are First Amendment implications here. You have an absolute right to remain anonymous in your speech, and the legislature has enacted a statute already to protect it. To sweep in all unidentified speech just to get a few people who are selling deceptively packaged speech is not in accord with First Amendment principles, and it's not even a rational use of legislative power. It's like burning the house down and roast a pig. Counsel, are we dealing with strict scrutiny here or a rational basis? Both. In regards to the overbred claim in WIC and its line of progeny all the way up into Carpenter, it's a rational basis. However, because of the First Amendment implications, because of the speech, it has to be addressed under strict scrutiny. It's the same error. 16-8, is that a content-based restriction? No, Your Honor, it's not. Well, wouldn't that equate to a rational basis review then? No, because of the First Amendment implications, it's still going to be done under strict scrutiny. It's never been a part of First Amendment jurisprudence that it's okay to ban protected speech, which anonymous speech is protected under the First Amendment, just because you want to get to unprotected speech, which deceptive speech would not be. So this would still be assessed at least in regards to the First Amendment implications under strict scrutiny. You raise the concern that the statute prohibits innocent conduct of a performer who fails for whatever reason to include the mandated information on her own CD, his or her own CD, that they're selling on the streets. How do you address the fact that that argument doesn't recognize that the legislature was free to determine that this would not be innocent conduct? Can't the legislature make that determination that it is not innocent conduct to do that? No, Your Honor, the general purpose of the criminal code is to define the elements and not punish non-culpable conduct. If we were to agree with Justice Garcia's analysis, it would eviscerate, weaken, and sign a project, including this Court's recent opinion in Carpenter. That's to say, in regards to Carpenter, if the legislature wanted to punish secret compartments, then why can't they? It's because non-culpable behavior is also engulfed in that. The legislature cannot simply say, especially when we're talking about First Amendment anonymous speech, cannot say all of it is bad. There's nothing inherently bad about unidentified speech. It's only bad if it's used deceptively. So make the statute a deceptive statute. Outlaw that. Don't outlaw all unidentified speech. We have to remember, this cannot be reconciled with this Court's opinion in Carpenter. It would eviscerate that holding. And we have to remember. Couldn't a consumer be just as confused or deceived by an unidentified recording where the seller has the consent of the owner? Can they still be confused by it? Only if the seller misrepresents it. The item is going to be what it is, regardless of how it's labeled. The only way it's going to be misrepresented is depending on how the seller holds it out. And that's what matters. And that's why it would be rational to outlaw deceptive recordings. Once again, we still have the theft by deceptive statute, which would arguably deal with that type of behavior. And it's very important to remember. We're talking about First Amendment. We're talking about speech. And it's a very broad statute. It's not just let's deal with the record industry and help them out. They're talking about any device known or hereafter invented. Are there any further questions? If I could, John, I'd like to reserve three minutes for Sir Reboto regarding just the cross-appeal issue. Thank you. You may do that, sir. Your Honors, on the First Amendment question, Section 16-8 is not nearly as broad as the defendant makes it out to be. It does not compel all performers and manufacturers to disclose their identities under all circumstances. It's much more narrow than that. It applies only to for-profit transactions, which means performers and manufacturers can distribute their material for free or distribute it at cost. It also allows for performers to perform under a pseudonym so they do not have to disclose their true identity. Only manufacturers must disclose their true name and address, but not all manufacturers, because only those who distribute their material for profit are covered, and those who seek anonymity in distributing their works. Second, the defendant's burden here is to prove that the statute on the First Amendment question is that it imposes a realistic and substantial threat to free speech compared to the statute's legitimate applications. In other words, he must show that it will realistically deter a substantial amount of speech. And he does not do that. Here, as you see, in the opinion of Anderson v. Nidor, the court points out that most performers and manufacturers would desire disclosure of their identities. So in each of those applications, you find out that Section 8 wouldn't deter any speech at all. The defendant doesn't make any serious effort to demonstrate that the statute poses a realistic threat. He relies exclusively on hypothetical situations. There's no evidence that performers and manufacturers have relied on anonymity to advocate certain ideas, be they political or social. There certainly isn't any record in the evidence or evidence in the records, excuse me, that performers and manufacturers operate anonymously. And relatedly, the defendant has to show that the statute poses a substantial threat. And again, all we have is examples. There are no examples of anonymity used by performers and manufacturers in the distribution of their material. The defendant relies exclusively on hypothetical situations. And with respect to the standard of defense, it says that the government must or there must be a strict scrutiny standard applied to this, meaning that the government has to show a compelling interest that's narrowly tailored. I think that puts the cart before the horse. First, the defendant has to show that the statute does have a realistic and substantial threat to free speech compared to its legitimate applications. If he shows that, then the people would have to show that there's a compelling interest that's narrowly tailored, which justifies the regulation at that point. So the first step of this, the defendant hasn't shown up. So the application of strict scrutiny is really premature at this point. And on the due process question, Section 16-8 does rationally implement its goal of protecting consumers as well as combating record piracy. And in the process, it doesn't violate due process. The primary goal of the statute is to protect consumers from purchasing items that are deceptively packaged. To do that, it requires that the name of the performer and the true name and address of the manufacturer be disclosed on the packaging of the statute. This method is perfectly rational. The disclosure of the performer's name assures the consumer that the contents of the recording is from one performer and not another. The manufacturer's disclosure tells the consumer, gives them a name and address in which to return an item to if they have a complaint. And also that this statute covers the packaging is important. It's one of the strongest tools that are used to promote a recording to a consumer. So it's very influential. And it's perfectly rational that the legislature chose to regulate this feature of a sound recording or an audiovisual recording in order to protect consumer interest. And along the way, the statute does not punish any more or any less behavior than the goals of the statute are in implementing it. It wants to protect consumers from unidentified recordings. And it defines what is unidentified. It's not telling the purchaser who the performer and the manufacturer is. It is not particularly broad in that respect, and it's very rational in how it implements its goal. So the people ask that this Court reverse the appellate court on the preemption issue, but affirm its ruling on Section 16-8. Thank you, Your Honors. Mr. Cossico, you have three minutes. Your Honor, in reading Section 16-8, there's nothing in there that says it just deals with the record industry. It is a very, very broad statute. In fact, counsel makes claims to talk about the hypotheticals used. But in dealing with overbreadth, this Court has always used hypotheticals. Therefore, that position has no merit whatsoever. In fact, in overbreadth analysis, it's never been done in a piecemeal fashion. So we don't have to wait for someone to be arrested and punished to bring it before this Court. That is the purpose of the overbreadth doctrine. In fact, in regards to counsel's concerns about whether someone has, you know, an address to return the product to, whatever the case may be, whatever process there is in place for the theft by deception statute, it's still, I would presume, to be available to anyone who is deceived by a product. And what we're talking about here is a criminal statute for arguably what is really just a civil problem. We have to remember, regarding the problems with hypotheticals, that that's what this Court did in Carpenter. We talked about the hypothetical Bible in the secret compartment. In Wick, we talked about the hypothetical farmer who may be demolishing a barn. This is the jurisprudence under our law. We'd ask that this Court affirm Justice Garcia's opinion regarding Section 16.7 and reverse it in regards to Section 16.8, finding that it is facially overbroad because it punishes innocent conduct, having first-amendment implications. Thank you very much, Your Honors. Thank you, Counsel. Case number 105453, People v. the State of Illinois v. Paul Williams, will be taken under advisory.